UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

MELODY JOHNSON-WILLIAMS,

                Plaintiff,

        v.

HOUSING AUTHORITY OF THE CITY
OF CAMDEN and MARIA MARQUEZ,

                Defendants.

_____

Civil No. 13-7120 (NLH/AMD)


**OPINION**

**APPEARANCES**:

DEAN F. OWENS
THE KILLINO FIRM
1800 JFK BOULEVARD
16TH FLOOR
PHILADELPHIA, PA 19103
    On behalf of plaintiff


JEFFREY L. SHANABERGER
HILL WALLACK, LLP
202 CARNEGIE CENTER
CN 5226
PRINCETON, NJ 08543-5226
    On behalf of defendants

**HILLMAN**, District Judge

    Presently before the Court are two motions:  defendants'
motion to dismiss plaintiff's first amended complaint, and
plaintiff's motion for leave to file a second amended complaint.
For the reasons expressed below, defendants' motion will be
granted and plaintiff's motion will be denied.

BACKGROUND

    Plaintiff, Melody Johnson-Williams, began working for

defendant, Housing Authority of the City of Camden ("HACC"), in October 2006 as a grant accountant.  Her duties included examining and maintaining HACC's financial books and records in connection with funding from grants.  Defendant Maria Marquez was the Executive Director of HACC, and plaintiff reported directly to Melvin Gibson, the Acting Director of Finance.

According to plaintiff's second amended complaint,[1] in January 2007, plaintiff discovered salary payment discrepancies with regard to Marquez's pay.  Plaintiff believed that Marquez was receiving double salary payments by submitting requests for vacation pay advances, but then also submitting regular payroll time sheets for salary payments covering the same period as her vacation time, for which she had already been paid.  Plaintiff claims that she reported this unethical, illegal and fraudulent practice to Gibson, who stated he would look into the matter.  Nevertheless, Gibson told plaintiff to continue the payments.

Over the course of the next five years, from 2007 through 2012, plaintiff reported Marquez's purported double salary payments to every finance director or acting finance director

---

[1] The Court sets forth the facts alleged in plaintiff's proposed second amended complaint in order to determine whether it would be futile to permit plaintiff's claims to proceed.  This is because plaintiff did not oppose defendants' motion to dismiss her first amended complaint, and instead filed a motion for leave to file a second amended complaint.  In analyzing plaintiff's claims for futility, the Court effectively applies the same standard as a Fed. Civ. P. Rule 12(b)(6).

who held those positions, including Gibson, Vernon Lawrence, and Vincent Muliro.  Plaintiff believes that each finance director brought the issue to Marquez's attention, but no action was ever taken against Marquez.

In February 2012, Marquez appointed plaintiff as Acting Director of Finance.  As a result, Marquez became plaintiff's direct supervisor, and it became plaintiff's job to approve Marquez's requests for advance vacation pay.  Plaintiff spoke to Marquez's assistant, Deputy Executive Director Vincent Figueroa, about the double payments, and on August 21, 2012, he arranged a meeting with Marquez, plaintiff and himself.  At the meeting, plaintiff voiced her concerns that the double payments were unethical, fraudulent, and illegal, and plaintiff claims that Figueroa agreed with her.  Plaintiff claims that Marquez, however, dismissed plaintiff's concerns and maintained that such payments were legal and proper, and demanded that plaintiff continue the payment advances, despite the cumulative employee earning report for 2012 and prior years showing that the gross income paid to Marquez far exceeded the salary for which Marquez's position was budgeted.

From that point on, plaintiff claims that Marquez's demeanor toward plaintiff changed.  Plaintiff claims that she was treated with coldness and hostility, the working conditions became onerous and oppressive, and Marquez threatened to deny

3

plaintiff her earned, approved vacation in 2012.  Additionally,
plaintiff claims that Marquez started to only refer to plaintiff
in the third person, Marquez began to harass plaintiff over
minor, day-to-day accounting questions, and Marquez lodged
complaints about alleged accounting errors that had no factual
basis.  Plaintiff claims that these complaints were made against
her because she spoke out about the double income payments to
Marquez.

In December 2012, plaintiff prepared the HACC budget for
2013.  The HACC approved the budget, which showed a $366,000.00
surplus, for submission to the Department of Community Affairs
at a later date.

On January 4, 2013, Marquez submitted advance vacation pay
forms to plaintiff, and plaintiff denied Marquez's request.
Plaintiff claims that after she denied Marquez's request,
Marquez demanded direct payments from the accounts payable
clerk.

Sometime during this period, plaintiff performed a review
of the 2013 budget she prepared, and determined that a computer
error caused the surplus to show $366,000.00 instead of
$66,000.00.  Plaintiff notified Marquez, and the corrected
budget was resubmitted to the board for approval.  According to
plaintiff, the corrected budget was approved and sent to the
Department of Community Affairs, and there was no loss of

4

funding due to the mistake.

On January 28, 2013, Marquez drafted a memorandum informing plaintiff that she was suspended from her duties as Acting Director of Finance, and that she had until February 4, 2013 to accept a demotion or resign.  Plaintiff claims that even though the proffered reason for her disciplinary action was related to the incorrect budget, she believes it was to punish her for opposing Marquez's illegal conduct.  Plaintiff accepted the demotion, but she made her acceptance subject to reservation of her right to appeal the demotion to the HACC board.  She also sent a letter to the HACC board, informing them of financial irregularities involving Marquez.  On February 4, 2013, Melvin Gibson was appointed Acting Director of Finance.  On March 27, 2013, the board denied plaintiff's appeal.

By late August 2013, plaintiff claims that Gibson had asked plaintiff to perform several duties that were usually the domain of the Director of Finance, including preparing the 2014 budget. In November 2013, plaintiff visited the careerbuilders.com website and saw that the Director of Finance position at HACC was posted as of November 6, 2013.  Plaintiff then filed this lawsuit on November 22, 2013.

On February 14, 2014, the HACC human resources director, Thomas Kwartnik, told plaintiff that she was being transferred to the Section 8 program as its General Accounts Manager.

5

Plaintiff claims that Kwartnik was evasive and non-responsive when she asked for the reason for her transfer.  Plaintiff wrote Mr. Kwartnik a letter stating that she believed the reason for her transfer was in retaliation for filing her lawsuit against HACC.

Plaintiff claims that defendants have violated Title VII of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C.2000e et seq., the Petition Claus of the First Amendment to the U.S. Constitution, brought pursuant to 42 U.S.C. § 1983, the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq.  Defendants have moved to dismiss plaintiff's first amended complaint for her failure to state any claims, and defendants have opposed plaintiff's motion for leave to file a second amended complaint, arguing that it would be futile.

<u>**DISCUSSION**</u>

**A.    Subject matter jurisdiction**

Plaintiff has brought her claims under federal law, pursuant to 42 U.S.C.2000e et seq. and 42 U.S.C. § 1983, as well as under New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims

under 28 U.S.C. § 1367.[2]

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

---

[2] As discussed below, however, because the Court will dismiss plaintiff's claims based on federal law, the Court will decline to continue exercising supplemental jurisdiction over plaintiff's state law claims.

7

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also
Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in
Twombly expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly."). Following the Twombly/Iqbal
standard, the Third Circuit has instructed a two-part analysis
in reviewing a complaint under Rule 12(b)(6).  First, the
factual and legal elements of a claim should be separated; a
district court must accept all of the complaint's well-pleaded
facts as true, but may disregard any legal conclusions.  Fowler,
578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a
district court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff has a
"'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct.
at 1950).  A complaint must do more than allege the plaintiff's
entitlement to relief.  Id.; see also Phillips v. Cnty. of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the
"Supreme Court's Twombly formulation of the pleading standard

8

can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a

9

Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

    **C.   Standard for Motion for Leave to Amend**

    Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires."  Fed.R.Civ.P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities.  Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).  An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.  Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988).

    **D.   Analysis**

        **1.   Plaintiff's Title VII claims**

    Plaintiff claims that HACC[3] violated 42 U.S.C. § 2000e-

---

[3] Individual employees cannot be held liable under Title VII. See Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061,

10

2(a)(1) and (2),[4] when Marquez began treating plaintiff with
hostility and coldness, and ultimately demoted plaintiff from
Acting Finance Director, because of plaintiff's gender.  To
support her claim that Marquez discriminated against women,
plaintiff alleges that in March 2012, a female co-worker in the
accounting department, LaTosha Johnson, discovered Marquez's
double salary payments, and reported it to plaintiff, who
advised Johnson to refuse to process Marquez's advance vacation
pay requests.  Plaintiff claims that Marquez ordered the payroll
budget for Johnson's position to be cut, and she was ultimately
terminated once funding for her position ran out.  Plaintiff
claims that Marquez "retaliated only against women who refused
to accommodate conduct which these women reasonably believed to

---

1078 (3d Cir. 1996).

[4] It shall be an unlawful employment practice for an employer—

    (1) to fail or refuse to hire or to discharge any
    individual, or otherwise to discriminate against any
    individual with respect to his compensation, terms,
    conditions, or privileges of employment, because of such
    individual's race, color, religion, sex, or national
    origin; or

    (2) to limit, segregate, or classify his employees or
    applicants for employment in any way which would deprive or
    tend to deprive any individual of employment opportunities
    or otherwise adversely affect his status as an employee,
    because of such individual's race, color, religion, sex, or
    national origin.

42 U.S.C. § 2000e-2(a)(1),(2).

be illegal, fraudulent and/or unethical while the men who questioned the conduct were not treated harshly or disciplined; and in fact, Mr. Gibson was rewarded with a promotion to Acting Director of Finance.  Plaintiff and Ms. Johnson suffered adverse employment actions as a result of their opposition to Defendant Marquez's conduct."  (Second Amended Compl. ¶ 76.)

To establish her claim that Marquez, a woman, discriminated against plaintiff, also a woman, plaintiff must show "sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated [her] less favorably than others because of [her sex] . . . ." Iadimarco v. Runyon, 190 F.3d 151, 163 (3d Cir. 1999); Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 264 (3d Cir. 2001) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998)) ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'"). Thus, in evaluating plaintiff's claims pursuant to a motion to dismiss/motion to amend, plaintiff is not required to provide evidence of discrimination, but she must offer enough factual matter to suggest that Marquez treated her less favorably because of her sex.  Plaintiff has not done so.

The last sentence in paragraph 76 of plaintiff's proposed

second amended complaint, stated above, demonstrates why her
gender discrimination claims fail:  all of plaintiff's
allegations in her complaint regarding her mistreatment and
retaliation by Marquez are not linked to plaintiff's gender, but
rather to plaintiff exposing Marquez's alleged double payment
scheme.  After six years in the accounting department of HACC,
and almost five years of reporting to the male directors
regarding Marquez's alleged double salary payments, Marquez
promoted plaintiff to the Director of Finance position in
February 2012.  Plaintiff's complaint states that Marquez's
mistreatment of her, as well as Johnson, did not began until
August 2012, after plaintiff personally confronted Marquez about
the advance vacation payment issue.  Plaintiff does not make any
allegations regarding Marquez's interactions with her as a
woman, or any comments Marquez made about plaintiff's gender.
Indeed, multiple times in her complaint plaintiff states that
her treatment was because she spoke out about the double income
payments made to Marquez.  (See SAC ¶¶ 40, 54, 57, 72, 75, 76,
87.)  Simply because the two people who opposed Marquez's
alleged double salary scheme are women, and Marquez allegedly
retaliated against these women for speaking out against her,
does not mean that Marquez discriminated against them because of
their gender.

        The only allegation regarding how Marquez treated the male

                              13

directors differently from plaintiff is that "upon information and belief, each male Director or Acting Director of Finance complained to Defendant Marquez that the double payments were improper, but no action was ever taken against Defendant Marquez." (SAC ¶ 25.) This allegation is a non sequitur that does not support plaintiff's sex discrimination claims. First, her "belief" that the previous directors related plaintiff's concerns with Marquez's advance payment requests to Marquez is insufficient to support her claims. Second, it can be reasonably surmised that the previous finance directors did not relay to Marquez plaintiff's concerns about the advance payment requests, because plaintiff's promotion to acting director would be inconsistent with plaintiff's allegations regarding how Marquez treated plaintiff after plaintiff confronted Marquez about her purported fraudulent activity. Third, if Marquez discriminated against plaintiff because she is a woman, and particularly a woman who questioned Marquez's integrity, presumably Marquez would not have promoted her. Finally, if plaintiff wanted to show how Marquez treated male employees different from female employees, she would need to allege that "each male Director or Acting Director of Finance complained to Defendant Marquez that the double payments were improper, but no action was ever taken against" the male directors, rather than "against Defendant Marquez."

14

Consequently, plaintiff's claims, even when accepted as true, do not suggest that Marquez treated plaintiff less favorably because of her sex.  Therefore, to allow plaintiff's Title VII claims to go forward in a second amended complaint would be futile, and, accordingly, her Title VII claims must be dismissed.[5]

### 2.   Plaintiff's First Amendment claim

Plaintiff alleges that HACC and Marquez acted in concert to punish and retaliate against plaintiff for exercising her right to petition the government in violation of the Petition Clause of the First Amendment to the United States Constitution, as applied to the states through the Fourth Amendment, and brought pursuant to 42 U.S.C. § 1983.  Specifically, plaintiff contends that "by filing her appeal of the demotion with HACC, a quasi-governmental entity, and by notifying the Board of Defendant Marquez's misfeasance, [plaintiff] engaged in protected activity

---

[5] This analysis regarding Plaintiff's Title VII claim (as well as the discussion that follows regarding her § 1983 claim) should not be interpreted as condoning or excusing any of Marquez's alleged conduct.  If proven true, her conduct may indeed be unethical, fraudulent, illegal, and even criminal in nature.  We leave that determination to others.  We hold only that the gravamen of Plaintiff's complaint, when viewed through the lens of Twombly/Iqbal, is a plausible claim of discrimination or retaliation based on allegations of improper conduct attributed to Marquez, rather than discrimination or retaliation based on Plaintiff's gender.  While there are many facts alleged to support the former, no facts allege support a plausible claim of the latter.

under the Petition Clause of the First Amendment of the United
States Constitution." (SAC ¶ 102.)  Additionally, "[b]y denying
the appeal based on Defendant Marquez's distorted presentation
in [the] executive session and affirming the demotion,
Defendants HACC and Marquez acted in concert to punish and
retaliate against the Plaintiff for exercising her right to
petition government for re[d]ress of grievances . . . ." (SAC ¶
103.)

     Plaintiff's allegations cannot support a viable First
Amendment violation claim.  To establish a First Amendment
retaliation claim based on the Petition Clause, a plaintiff must
prove (1) that the First Amendment protected the activity in
question, (2) that a government agent responded with a
retaliatory action, and (3) that the protected activity was a
substantial factor in the retaliation.  Brightwell v. Lehman,
637 F.3d 187, 194 (3d Cir. 2011).  In circumstances where the
plaintiff is a government employee, the First Amendment only
protects against retaliatory actions if the protected activity
involved a matter of public concern.  Borough of Duryea, Pa. v.
Guarnieri, 131 S Ct. 2488, 2500-01 (2011).  Whether an
employee's petition relates to a matter of public concern will
depend on "the content, form, and context of [the petition], as
revealed by the whole record," and the "forum in which a
petition is lodged will be relevant to the determination of

16

whether the petition relates to a matter of public concern."
Guarnieri, 131 S. Ct. at 2501 (citations and quotations
omitted).  "A petition filed with an employer using an internal
grievance procedure in many cases will not seek to communicate
to the public or to advance a political or social point of view
beyond the employment context."  Id.

Plaintiff argues in her brief that the "public funds by
Defendant HACC were used as a piggy bank or ATM machine by
Defendant Marquez," and the "scheme orchestrated by Defendant
Marquez involves a matter of public concern involving the
misappropriation of public funds for personal gain."  (Pl. Br.
at 12.)

There are several problems with plaintiff's position that
issues of public concern are raised by her speech.  First, these
claims regarding the misappropriation of government funds are
not stated so specifically in plaintiff's complaint, and her
brief cannot ameliorate that deficiency.  Second, just because
public funds may be involved by virtue of HACC being a
governmental entity, plaintiff's appeal of her demotion to the
HACC board does not "seek to communicate to the public or to
advance a political or social point of view beyond the
employment context."  Indeed, plaintiff was aware of Marquez's
alleged "piggy bank" scheme for over six years, and plaintiff
never communicated the "misappropriation of public funds" beyond

17

telling her supervisors, or, six years later, informing the HACC

board after she was demoted.   As the Supreme Court opined,

> Unrestrained application of the Petition Clause in the
> context of government employment would subject a wide
> range of government operations to invasive judicial
> superintendence.   Employees may file grievances on a
> variety of employment matters, including working
> conditions, pay, discipline, promotions, leave,
> vacations, and terminations.   Every government action
> in response could present a potential federal
> constitutional issue.   Judges and juries, asked to
> determine whether the government's actions were in
> fact retaliatory, would be required to give scrutiny
> to both the government's response to the grievance and
> the government's justification for its actions.   This
> would occasion review of a host of collateral matters
> typically left to the discretion of public officials.
> Budget priorities, personnel decisions, and
> substantive policies might all be laid before the
> jury.   This would raise serious federalism and
> separation-of-powers concerns.   It would also consume
> the time and attention of public officials, burden the
> exercise of legitimate authority, and blur the lines
> of accountability between officials and the public.

Guarnieri, 131 S. Ct. at 2496 (2011).

In accordance with observations of the Supreme Court,

plaintiff's letters to the HACC board do not rise to the

matter-of-public-concern threshold required to maintain a

First Amendment Petition Clause claim.[6]   Consequently,

---

[6] We recognize that if a public employee engages in a theft or
embezzlement of public funds that a certain, and important,
public interest is implicated.   However, as the Supreme Court
noted in Guarnieri the issue of private and public concerns
often overlap and that "[e]ven if an employee does speak as a
citizen on a matter of public concern, the employee's speech is
not automatically privileged.   Courts balance the First Amendment
interest of the employee against "the interest of the State, as
an employer, in promoting the efficiency of the public services

amendment of this claim is futile, and it must be
dismissed.

### 3.   Plaintiff's state law claims

The remaining two claims in plaintiff's complaint –
NJCEPA and NJLAD - are based on New Jersey state law.
Because plaintiff's federal claims are dismissed, and
because this case is still at the pleading stage, the Court
declines to exercise supplemental jurisdiction over her
state law claims.  See 28 U.S .C. § 1367(c)(3) (providing
that a district court may decline to exercise supplemental
jurisdiction over state law claims when it "has dismissed
all claims over which it has original jurisdiction");
Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169, 174 (3d
Cir.2009) (affirming district court dismissing state law
claims after federal claims were dismissed).  Accordingly,
plaintiff's state law claims are dismissed without
prejudice.  Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009)
("If a district court decides not to exercise supplemental

---

it performs through its employees." Guarnieri, 131 S. Ct. at
2493 (quoting Pickering v. Board of Ed. of Township High School
Dist. 205, Will Cty., 391 U.S. 563, 568 (1968)).  As we have
noted, Plaintiff did not raise her concerns outside her office
until she had been demoted, thus raising this public concern
only in the context of a private matter. "While the First
Amendment invests public employees with certain rights, it does
not empower them to 'constitutionalize the employee grievance.'"
Garcetti v. Ceballos, 547 U.S. 410, 420 (2006)(quoting Connick
v. Myers, 461 U.S. 138, 154 (1983)).

jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.").

<strong><u>CONCLUSION</u></strong>

For the reasons expressed above, defendants' motion to dismiss plaintiff's complaint will be granted, and plaintiff's motion for leave to file an amended complaint will be denied.  All claims in plaintiff's complaint will be dismissed.  An appropriate Order will be entered.

Date:  October 16, 2014          s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.